The petitioners ask of the Court the establishing a ferry for the benefit of the public. The petition, therefore, is substantially *Page 132 
to be considered as the prayer of the community, for whose sake all public offices are created. It is necessary, therefore, to examine what are the facts which appear in this case.
It seems that the place at which the petitioners desire leave to establish a ferry is a little more than a mile below one ferry, and (168) not as much above another; that both these ferries are kept in good repair, and it does not appear that any inconvenience exists, or has existed, for want of expedition in passing at either of them. The price of ferriage can be no imposition, as that is to be regulated by the county courts, and may, therefore, be considered as dependent upon publicwill.
The river, however, is but about half the distance in width, and is smooth and gentle, and would authorize the petitioners, it is believed, to transport for lower prices; and in traveling nine miles, not quite one mile would be saved in distance on one road, and a few yards lost on the other. It also appears that there is no public road leading to the place for the new ferry; but that the petitioners have, "by consent of the proprietors of the lands through which they pass," opened two roads which are now in common use; and that they "are willing to keep the said roads in repair with their own hands and such of the neighboring inhabitants as have promised their voluntary assistance." It is also stated in the case that the existing ferries are old established ferries, and from a fair examination of all the roads it does not appear that any decided preference can be given (everything taken into consideration) to either of them.
Upon this state of the facts the Court is to determine how far the public, for whose benefit the petitioners supplicate, would be accommodated by allowing the prayer of the petition; and in this determination, it is for the court to infer who in this respect exercises the province of a jury.
The sole object of the law in conferring every public appointment is the promotion of public convenience; and, though it is true that in pursuing this great end, private interest must yield, yet it would upbraid justice and the majesty of that law by supposing it capable of sacrificing individual interest for any other purpose. The person who opposes the present petition may say to the law, "You have granted to me the right of a ferry many years ago, which has always been, and is now, in good repair, at which it is perfectly convenient for everybody to pass, (169) as much so as at the new ferry. I have been at great expense in fitting out my ferry, and have entered into bond to keep it in repair; that it was understood between us both, my interest should not be impaired but for my own neglect or for the benefit of the community; *Page 133 
and that though you have the power, yet you cannot rightfully exercise it but in a case where it is to punish me or advance the public good." To this it has been answered that the petitioners have an equal right to participate in all the benefits derivable from the use of their own property, and that as they have a place on the river where they might derive profit from a ferry, they ought not to be restricted or placed in a worse situation than the defendant, merely because he obtained his ferry first; and withal, that cupidity being the grand motive for all human action, it shall be fostered where its gratification would result in public convenience; that though the establishment of the new ferry might curtail the profits of the old one, yet the rivalry which would follow would insure attention and good conduct at both.
In the present inquiry the force of this argument has no bearing. If to have a public ferry was a right common to everybody, and was acquired at pleasure by constructing boats and opening roads, it might possibly apply; but it ought to be recollected that the law (and, as we think, a very wholesome one) under certain limitations has taken it from every citizen, and that none is to exercise it but by license and entering into bond; and that the defendant Long has obtained his license from the same source to which the petitioners make their application — the law; and that it behooves this authority to observe whether, consistently with the good faith of its engagement with Long, it can benefit Beard or Merrill, for to make it necessary to obtain a license upon which no tax is paid the public, and at the same time to say the Court is bound to grant it to all who apply, would be absurd. And to say, also, that it would beequitable or reasonable for the Court to interfere where the effect of granting the petition would be only to benefit the petitioners at the loss
of defendants would be more so. The law has wisely considered that by permitting every one at pleasure to keep a ferry and (170) establish his own rates great public inconvenience would result, from all being in bad order; that they would be so multiplied and the emoluments so trifling as not to be sufficient to defray the expense. The emoluments, therefore, are not an act of public favor, but intended as a remuneration for public services; the end in view is the facility of passing. In what respect, then, is the public convenience suffering for want of the new ferry? Are the citizens at large — the public — put to any difficulty in crossing this river which would be obviated? Do the citizens at large travel an unnecessary distance which would be remedied? The answer in both cases is, No. But it is said the narrowness of the stream would enable the petitioners to perform the same benefit to the public at a cheaper rate, and, therefore, it would be serviceable to the community. Now, this is merely speculative. It might turn out, upon *Page 134 
experiment, that the fact was otherwise; that the least swell in the stream would make it more rapid by being confined to a narrow channel; and the circumstances of there being two ancient ferries, the one a little above and the other just below, established at a time when ease and convenience were principally consulted, is a strong proof at least of the opinion entertained by those who were acquainted with the nature of the stream; and if it really be the case, as the petitioners state, that the road from Smith's to Salisbury would be better, and one mile shorter, and cross the river at a much better place for a ferry, it is a little unaccountable that, with all these inducements, the road should at first have run where it is; and not less so that the eyes of the community should have so long remained closed against so obvious a benefit. If, therefore, any inference can be drawn from the facts and circumstances, they are all against the petitioners. The present application, then, seems to be substantially the same as an offer to underbid. Then the low price would be attained; but surely such an offer would deserve to be scouted by every court having just regard to its own dignity, as (171) entrusted with the administration of the laws, if we have a just idea of the terms upon which such grant is made.
There is another reason not without its weight. How can the public have an interest in a ferry at a place to which there is no way for the public to travel? How, then, can it be said the public convenience would be promoted by the establishing a ferry, when it is left in the power of every individual through whose lands the way may pass to shut it up at pleasure? Again: the road leading from the new ferry to Smith's runs so near the old road as to induce the belief that it would be unnecessarily burdensome to the community to keep both in repair. This, therefore, would be a goodpublic reason against a new public road; and if it is to remain a private way, dependent upon the petitioners and those who are to contribute "voluntary assistance" for being kept in repair, it is easy to foresee, from a comparison with public roads on which individuals are obliged by law to work, what will be its condition; and if there are other motives which sometimes stimulate to action, that of itself ought, without greatmanifest public convenience, to induce the Court to withhold interference.
Wherefore, we are of opinion that the petition should be
Dismissed.
NOTE. — See Anonymous, 2 N.C. 457.
Cited: Barrington v. Ferry Co., 69 N.C. 171. *Page 135